# Cadillac Oil & Gas Company v. Robert Lovelace & Company.

(Decided March 16, 1923.)

## Appeal from Allen Circuit Court.

1. Mines and Minerals—Petitions Held to Sustain Judgment for Lost Profits From Drilling Wells.—Petitions for breach of a contract whereby plaintiff was to drill wells on a lease belonging to defendant, which alleged that, if plaintiff had been permitted to fulfill its contract, its profits, added to what was already due it for the drilling that had been done, would have been more than sufficient to finish paying for the drilling machine purchased from defendant, and to have yielded a net profit in excess of the amount of the judgment for plaintiff, are sufficient to sustain the judgment.

2. Mines and Minerals—Extra Work Under Well-drilling Contract Held Not to Include Drilling Out Plugged Hole.—A provision in a contract to drill wells, requiring the driller to do extra services at the rate of $25.00 a day, such as pulling drills, cleaning wells, etc., does not require the driller to drill out a well which had been previously completed and plugged, which was work of a character ordinarily not required in carrying out a contract of that kind, and which there was evidence to show was not included in that provision.

3. Mines and Minerals—Evidence Held to Sustain Amount of Damages Awarded for Breach of Contract to Drill Wells.—In an action for breach of contract employing plaintiff to drill wells on defendant's lease, evidence that the work already done by plaintiff amounted to almost as much as the unpaid balance owed by plaintiff to defendant on the drilling machine, and that, if plaintiff had been allowed to complete the contract, he would have earned a profit of nearly $1,200.00, held to show that a judgment for plaintiff for $905.00 was not excessive.

HARPER & DENTON for appellant.

GILLIAM & GILLIAM for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

On June 12, 1920, appellant sold to appellee an oil drilling machine for $2.500.00, $750.00 of which was paid or credited on the purchase price at the date of the sale. Under the same contract, which was in writing, appellant employed appellee to drill five wells on a tract of land designated in the contract as the Patton lease, agreeing to pay therefor at the rate of $3.00 a foot. It was agreed that $300.00 of the amount earned on each

of the wells would be credited on the unpaid balance for the drilling machine, and it was further stipulated that for extra work, "such as pulling casing, cleaning wells, etc.," the drilling company should be paid at the rate of $25.00 a day.

Appellee drilled two wells and started the third, but after drilling about ninety feet was stopped by the oil company. Appellant paid for the drilling of the first well at the agreed rate, but no part of the contract price for drilling the second well nor the ninety feet of the third well was paid. Appellee then instituted two suits in the Allen circuit court, seeking in one of them a recovery of the contract price for the work done, and in the other asking damages in the sum of $1,150.00 for breach of the contract. Appellant admitted that appellee was entitled to compensation for the drilling at the rate of $3.00 a foot, but asserted claim for the balance due on the machine, which it alleged exceeded the amount due for work done, and asked for judgment in its favor for the difference. In the suit for damages it traversed the material averments of the petition, and as affirmative defenses alleged that appellee had breached the contract by refusing to drill the wells at the points indicated by appellant, and by failing to comply with the stipulation whereby it agreed to perform extra work at the rate of $25.00 a day. These averments were denied. The two cases were consolidated and transferred to equity, and on the hearing before the chancellor judgment was rendered in favor of appellee for $905.00, from which this appeal is prosecuted.

Three points are urged for a reversal of the judgment: First, the averments of the petition do not support the judgment; second, the evidence shows that the contract was breached by appellee, which relieved appellant of liability for damages; and, third, the measure of damages adopted by the trial court was incorrect, even if it be assumed that the contract was broken by appellant.

The first contention involves an examination of the two petitions, the allegations of which show that the profits that appellee could have earned, if it had been permitted to fulfill its contract, added to what was due it for the drilling that was done, would have been more than ample to finish paying for the drilling machine and to have given appellee a net profit in excess of the amount of the judgment. There is, therefore, no ground for

the contention that there are no allegations sustaining the judgment.

The second contention presents two questions of fact. The first relates to the provision by which appellee bound itself to do extra work, "such as pulling, casing, cleaning wells, etc.," at the rate of $25.00 a day, and the second to an oral agreement, said to have been made after the written contract had been executed, by which appellee agreed, at the option of appellant, to drill the five wells either on the Patton lease or another lease in that county that appellant owned. It is said that appellee failed to comply with both of these agreements.

In respect to the first, which pertains to the obligation to do extra work at $25.00 a day, the evidence shows that after the second well was drilled on the Patton lease it was plugged. There is some controversy as to whether the plugging of the well by appellee was authorized, but the evidence, as we appraise it, sustains appellee's contention on this point. Later, after the drilling machine had been moved to another part of the land, appellant requested appellee to remove the machine to the well that was plugged and to drill the plugs out. Appellee refused to accede to the request, except upon condition that appellant would pay for that service at the rate of $50.00 a day, which it claimed was the usual price for that kind of work. The question is whether that particular work comes within the stipulation of extra work, "such as pulling casing, cleaning wells, etc." On that point there is also some contradiction in the evidence, but the weight of it sustains appellee's position. Besides, that character of work would ordinarily not have been required in the carrying out of the contract. It was made necessary in this case by an unusual situation that could not have been anticipated, and it cannot be regarded as within the contemplation of the parties when drafting the provision in question.

The second contention on this ground is that by a subsequent oral agreement appellee obligated itself to drill the five wells on either the Patton lease or the other lease owned by appellant, and by refusing to do so committed a breach of the contract. It is admitted that appellee refused to move the drilling machine to the other lease and drill the other three wells on that lease. Nothing is said in the written contract from which it could be inferred that appellee assumed an obligation of that

kind; in fact, the obligation was to drill five wells on the Patton lease. If it be assumed, therefore, that the terms of the written contract could be changed by a subsequent oral agreement, there remains the issue of fact as to whether such an agreement was made. On that issue the evidence preponderates in favor of appellee and amply supports the judgment. So we conclude that neither of the incidents relied on by appellant effected a breach of the contract.

The trial court did not give its reasons for the judgment, and no motion was made for separate findings of law and fact. We are therefore unable to ascertain what the views of the court were as to the measure of damages. But the proof shows that the oil bearing sand on the Patton lease was approximately 400 feet below the surface, and that the drilling and extra work done by appellee amounted to almost as much as the unpaid balance on the drilling machine; and further, that if appellee had been permitted to complete its contract, it would have earned a profit of about a dollar for each foot drilled, making a total of something near $1,200.00. In view of this evidence it is clear that the award of $905.00 is not excessive.

The judgment is affirmed.